FRANCIS G. WILKINS *et al.*, plaintiffs in error, *vs.* CHARLES B. TALIAFERO, defendant in error.

A distress warrant will lie in this State to enforce a contract for rent, to the effect that the tenant should pay to the landlord for rent "four and one half bales of first-class cotton, each of the weight of five hundred pounds, the half bale to weigh two hundred and fifty pounds, and in addition to fix that part of the kitchen on said place that has been injured by fire," proper affidavit being made as to the value of the cotton and the cost of fixing the kitchen.

Distress warrant. • Landlord and tenant.    Before Judge JAMES JOHNSON.    Muscogee Superior Court.  May Term, 1873.

Taliafero brought debt against Wilkins and others, as securities upon the bond of John R. Ivey, deceased, late sheriff of said county, for an amount of money alleged to have been realized by said sheriff on the sale of certain property levied on under a distress warrant in favor of the plaintiff.

Upon the trial of the case the following affidavit and distress warrant were tendered in evidence :

" Before me, a justice of the peace in and for the county of Muscogee, personally came Charles B. Taliafero, who being sworn, deposeth and saith, that John O'Pry rented from him his farm in said county for this year, and agreed to pay him for the rent of the same, four and one-half bales of cotton, first class, each to weigh five hundred pounds, and the half bale two hundred and fifty pounds, and to pay the same out of the first cotton gathered on his place, and by the middle of November next; and also promised to fix that part of the kitchen on said place that had been injured by the fire, and the said cotton would now be worth \$528 75, and the said repairs would be worth \$200 00.    He further saith that said O'Pry is seeking to remove his goods from the said premises; he further saith that he claims from said O'Pry \$728 75, made up of said two sums, as rent, and that he prays a distress warrant for the same, the said O'Pry having failed to make said repairs or pay said cotton.

(Signed)                     " C. B. TALIAFERO.
"Sworn to and subscribed before me
    "October 28th, 1869.
(Signed)       "CHARLES COLEMAN, J. P."

"GEORGIA—MUSCOGEE COUNTY.

    " *To the Sheriff of said county or his Deputy :*
WHEREAS, Charles B. Taliafero has this day made oath before me, that John O'Pry rented his place or farm for this

year, and was to pay him four and a half bales of cotton by the middle of next November, for the same, and was also to do repairs on the kitchen, and the said cotton and repairs would be worth $728 75, and that the cotton has not been paid or the repairs done: These are therefore to command you to levy on any property of said O'Pry, whether to be found on said premises or elsewhere, a sufficiency to make the sum of $728 75, besides costs, by the sale of the property so levied on, and have you the said money at the next superior court to be held in and for the said county. In witness whereof I have hereunto set my hand, on this 28th October, 1869."

(Signed)    "CHARLES COLEMAN, J. P. [L.S.]"

The defendants objected to said affidavit and distress warrant as inadmissible, the indebtedness set forth therein not being of such a character as would authorize the proceeding. The objection was overruled, and defendant excepted. Error is assigned upon said exception.

R. J. MOSES; M. H. BLANDFORD, for plaintiffs in error.

HENRY L. BENNING, for defendant.

McCAY, Judge.

The question made in this case is whether the rent claimed by the affidavit is sufficiently certain to authorize a distress warrant. As to the four and a half bales of cotton, each bale weighing five hundred pounds, and first-class in quality, which is alleged to be worth $528 75, it is admitted that this comes within the rule laid down in *Seabrook's case*, 39 *Georgia*, 14, and which is well established by the authorities. But it is said that the promise to "fix the kitchen" which had been damaged by fire, and which it is alleged, in the affidavit, was worth $200 00, is so uncertain as to make the warrant void. We do not see any very material distinction between the cotton and "fixing the kitchen." As to both, proof is necessary to get at a certainty. The value of the cotton must be proven, as well as the value of "fixing the kitchen." Cotton, it is

true, has a market value, and its value is somewhat easier proven. But the authorities, even at common law, do not confine the rule to cases where the value of the thing promised to be done by way of rent has a market value. A promise to do so many days' ploughing, to shear the sheep in the landlord's pasture, have been both held sufficiently certain: 2 Blackstone's Com., 41; 1 Coke on Lit., 96, *a.* In Baggs *vs.* Manby, 8 Exchequer Reports, 649, the rent was "cleaning the parish church;" in Dawson *vs.* Cross, 1 C. B., it was "ringing the church bell." Why cannot the expense of fixing the kitchen be as definitely fixed by proof as the value of the "cleaning" or "ringing" in the cases referred to, or as the worth of the shearing or pasture of the sheep. We think therefore, that even "the fixing the kitchen" may be made certain, and is therefore rent. As a matter of course, this must be agreed to be done as "rent," and not be a mere shifting from the landlord to the tenant of the duty to repair. The thing must be agreed to be done as rent—that is, it must be for the use of the land. It need not be money, or that any other *thing* shall be delivered. It may be of something to be done—just this case, and if the value is susceptible of proof, distress lies—it is rent.

Judgment affirmed.